UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JESSICA S.,                                    :
          Plaintiff,                          :
                             :
          v.                                 :          C.A. No. 21-75MSM
                             :
KILOLO KIJAKAZI,                               :
Acting Commissioner of Social Security,        :
          Defendant.                          :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On January 23, 2019, Plaintiff Jessica S., a high school graduate with a year of college and CNA training who is "a younger individual," filed her fourth disability application seeking Supplemental Security Income ("SSI"). She has not worked since May 2011[1] and lives with her mother, who supports her. On her application, Plaintiff claimed disability due to mental impairments (depression, anxiety, panic attacks and hallucinations), fibromyalgia (with fatigue and chronic body pain), bowel obstruction, migraines, acid reflux and tachycardia. An administrative law judge ("ALJ") substantially accepted most of these and more (obesity and venous insufficiency) as severe impairments but, in reliance on the findings of the non-examining physician and psychologist experts, concluded that Plaintiff's RFC[2] nevertheless permitted her to perform light work, albeit with significant additional limitations, including postural limitations, a limitation based on the need to be near a restroom, and limitations based

---

[1] Because of the prior denials, Plaintiff amended her alleged onset date to January 23, 2019, (the filing date of the pending SSI application). Tr. 43, 379.

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

on the ability to do only simple, routine, repetitive work with limited contact with the public and coworkers.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her prior work in the healthcare field, but she could work, for example, as a housekeeper, and therefore was not disabled.

Plaintiff contends that the ALJ made four errors in reaching this conclusion: (1) at Step Two, the ALJ rejected as non-severe Plaintiff's vision limits in the right eye due to traumatic maculopathy and borderline glaucoma; (2) the ALJ failed properly to assess the impact on her ability to work of the recent surgical implantation of a G-tube that had to be hooked to a bag to empty accumulating stomach contents at least once a day; (3) the ALJ misinterpreted the mental health evidence and wrongly rejected the opinion of Nurse Practitioner Chanta Pou, who was Plaintiff's longtime prescriber of medication for mental health issues; and (4), citing Sacilowski v. Saul, 959 F.3d 431, 435-36 (1st Cir. 2020), the ALJ did not properly consider the impact on working of the sheer number of days Plaintiff would be absent due to her many health issues. The Acting Commissioner of Social Security ("Commissioner") argues that the ALJ properly applied the law to the substantial evidence of record.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner.  ECF No. 10.  The Commissioner has filed a counter motion to affirm the denial of benefits.  ECF No. 13.  Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   <u>Standard of Review</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. <u>Brown v.</u>

<u>Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), <u>aff'd</u>, 230 F.3d 1347 (1st Cir. 2000) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the

Commissioner must be affirmed, even if the Court would have reached a contrary result as finder

of fact. <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per

curiam). The determination of substantiality is based upon an evaluation of the record as a

whole. <u>Brown</u>, 71 F. Supp. 2d at 30; <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986)

(court must consider evidence detracting from evidence on which Commissioner relied). The

Court's role in reviewing the Commissioner's decision is limited. <u>Brown</u>, 71 F. Supp. 2d at 30.

"[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." <u>Id.</u> at 31

(citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399 (1971)).

## II.     <u>Disability Determination</u>

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 416.905. The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which

exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. <u>See</u> 20 C.F.R. §

416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(g). The claimant bears the burden through Step Four; it shifts to the Commissioner at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020).

**B.    Opinion Evidence**

To assess opinion evidence, an ALJ must consider the persuasiveness of medical opinions in the case record. See 20 C.F.R. § 416.920c. The most important factors are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Weighed in light of the evidence of record, the ALJ may consider the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 416.920c(c)(1)-(5).

**C.    Reliance on Experts**

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec'y of Health &

Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").  If the medical evidence is such that a "reasonable mind might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise.  Sherry B. v. Saul, 518 F. Supp. 3d 590, 591 (D.R.I. 2021) (cleaned up).  Relatedly, it is error for an ALJ to deny benefits in reliance on a consulting or a non-examining expert physician or psychologist who, despite expertise, was not privy to parts of the medical record that evidence worsening or that support the claimed limitations.  Padilla v. Barnhart, 186 F. App'x 19, 22-23 (1st Cir. 2006) (per curiam); Virgen C. v. Berryhill, C.A No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018); Cruz v. Astrue, No. C.A. 11-638M, 2013 WL 795063, at *13 (D.R.I. Feb. 12, 2013), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).  In such circumstances, without procuring testimony from a medical expert who has interpreted the entire medical file, the ALJ is substituting his lay judgment for a necessary expert medical opinion; the resulting decision is subject to remand because it is not supported by substantial evidence.  Hall v. Colvin, 18 F. Supp. 3d 144, 152 (D.R.I. 2014).

## III.   Analysis

### A.   Plaintiff's Physical Limitations

Regarding her physical impairments and related limitations, Plaintiff challenges the ALJ's finding that she retained the strength to perform light work as required for such jobs as "housekeeper," despite the VE's testimony that all work would be precluded for an individual who is absent, on average, more than one day a month over the course of eleven months in a row or who has to take an unscheduled break for a medical reason of one hour per day.  Tr. 73-74;

see Dictionary of Occupational Titles ("DOT"), § 323.687-014 (Cleaner, Housekeeping) (duties include cleaning rooms, making beds, moving furniture, hanging drapes and rolling carpets). Plaintiff's principal argument[3] is her contention that the ALJ ignored her pre-hearing asseveration that she cannot work "due to the time off-task and unscheduled absences due to the totality of her conditions," Tr. 382, as well as that he wrongly relied on the unsupported finding that she could work despite a surgically implanted G-tube to drain stomach contents and could perform the hour-long (and painful) emptying operation after work hours. In support of her argument, Plaintiff cites Sacilowski, in which the First Circuit affirmed the finding that an ALJ erred in failing to address the impact of migraines and bladder issues on the claimant's ability to maintain acceptable attendance and avoid excessive absenteeism. 959 F.3d at 436.

To assess these arguments, the Court must step back in time, as reflected in the longitudinal medical record, to 2009, when Plaintiff had gastric bypass surgery due to morbid obesity, leaving her with a "remnant stomach," and resulting almost immediately in complications followed by multiple bowel obstructions. Tr. 557. Through the end of 2018, Plaintiff had had abdominal surgery at least five times to rectify bowel obstructions due to adhesions and to address a mesenteric defect resulting in internal hernia of the bowel; on at least five other occasions, she went to the hospital due to abdominal pain fearing a possible

---

[3] Plaintiff also contends that the ALJ erred at Step Two in rejecting as non-severe her right eye vision limitations due to traumatic maculopathy and borderline glaucoma. In support, Plaintiff relies on her testimony that her right eye sees "[a]lmost absolutely nothing . . . [j]ust a lot of fuzzy stuff," Tr. 54, as well as on the decision of the same ALJ in denying her 2016 disability application that "right eye macular degeneration" then was severe, Tr. 85, 90, although Plaintiff neglected to advise the Court that her subsequent application was denied in 2018 by a different ALJ, who found that the more recent evidence established a non-severe right eye impairment. Tr. 112. In the current case, the ALJ considered the eye treatment records from 2018-2020, as well as the findings of the non-examining physicians whose file review included 2016 records, which, like the 2018-2020 records, reflect that the eye is stable, requiring only ongoing observation. Tr. 386-89, 2376-89. From a functional perspective, Plaintiff testified that she has a driver's license and can drive, access the internet, maintain a Facebook account, bike and communicate by text. Tr. 47, 58. 1139. Based on this evidence, I find that the ALJ's Step Two vision finding is well grounded in substantial evidence. I do not recommend that it be revisited on remand.

obstruction but the problem resolved without surgery.  Tr. 513, 557, 646, 686, 735, 922; see Tr. 886 ("has had 10 CT scans in the past few years").

Focusing on the period in issue,[4] during 2019, Plaintiff had, inter alia,[5] the following procedures and hospitalizations:

- A venous sclerotherapy procedure in March 2019, Tr. 1582;

- A partial hospitalization at Butler Hospital for a week in April and early May 2019, Tr. 1489-95;

- Two potential bowel obstruction episodes that brought her to the hospital on May 9 and 12, 2019 (both resolved without surgery), Tr. 681-86;

- Sinus surgery in June 2019, Tr. 1522;

- A three-day hospitalization in September 2019 for bowel obstruction that resolved without surgery, Tr. 2081.

In addition, throughout 2019, Plaintiff had regular appointments with her rheumatologist to monitor fibromyalgia approximately every three months; with her neurologist for Botox injections to treat migraines every three months; with an APRN for mental health medical management every one to two months and for therapy every two weeks.  Over the course of 2019, Plaintiff suffered regular migraines, reduced significantly by quarterly Botox injections to four to five a month according to her treating physician.  Tr. 1755-56.  During the ALJ hearing Plaintiff testified that she was down to six migraines a month and each lasted four to five hours, during which she had to lie down.  Tr. 61.  Finally, from March to October 2019, Plaintiff was

---

[4] The period in issue runs from the amended date of onset (which is also the date of application) – January 23, 2019 – through the ALJ's adverse decision, which issued on July 1, 2020.

[5] To be clear, this is not intended as an exhaustive inventory of Plaintiff's medical appointments in 2019.  The Court is simply listing the medical appointments that appear unambiguously to impact the ability to stick with a work schedule.

treated for urinary retention, with several appointments with a urologist and then by an extended period of regular (at least once a week) physical therapy.

While the non-examining physician experts saw some, but not all, of these 2019 records,[6] their findings simply do not address the absenteeism that would be caused by the sheer scope of these medical concerns during 2019.  Also significant, in assessing the capacity to perform light work, these physician experts did not see any of the physical therapy records, which contain objective measurements of Plaintiff's impaired strength and limited ability to move as a result of her many abdominal surgeries.  E.g., Tr. 1846.  Nor did they see the opinion from later in 2019 of the neurologist regarding Plaintiff's residual migraine intensity (four to five a month).  Tr. 1755.  They focused instead on the neurologist's note from February 26, 2019, which describes residual intensity as "a couple migraines per cycle," as well as that "Botox has been a tremendous help in controlling chronic migraine."  Tr. 1488; see Tr. 145.

During 2020, Plaintiff's bowel obstruction impairment worsened significantly.  From the beginning of 2020 until the ALJ hearing in early May, it resulted in the following:

- Two visits to the emergency room in January 2020, with the second resulting in a two-day admission to monitor an obstruction, Tr. 2017-58;

- Week-long hospitalization, with surgery to address two obstructions caused by adhesions and an internal hernia performed on February 12, 2020, Tr. 1952-2002;

- Second week-long hospitalization in late February and early March 2020, with surgery to address acute obstruction, requiring the implantation of a G-tube to decompress the remnant stomach, Tr. 1884-1919;

- A third procedure in March 2020 to replace the G-tube, which had dislodged, Tr. 1947; and

- Weekly appointments with a visiting nurse in March, possibly into April 2020 to deal with the G-tube, Tr. 2369.

---

[6] The file review on reconsideration was completed on August 9, 2019.

Regarding the G-tube, the record reflects that Plaintiff's treating physician had first considered that it might be necessary in 2019.  Tr. 2147.  The last reference to the G-tube appears in a record dated April 8, 2020, when the gastroenterologist noted that Plaintiff had discomfort at the site but that the G-tube had had no output since mid-March so that Plaintiff's providers should begin to analyze whether it could be removed.  Tr. 2309.  Plaintiff stated at the ALJ hearing in May that it needed to be emptied and cleaned daily, which took an hour, was painful, and required her to be close to a restroom.  Tr. 52-53, 64-65.

In addition to these serious bowel issues, during 2020, Plaintiff continued to be treated for venous insufficiency, resulting in the recommendation in February 2020 that she needed another procedure.  She also continued the same treatment with the rheumatologist, neurologist, APRN and therapist as in 2019 for fibromyalgia, migraines and mental health.  Importantly, the non-examining expert physicians saw no records from 2020.  In particular, they did not see the nearly four-hundred-page exhibit of material submitted by Kent Hospital reflecting treatment for Plaintiff's many 2020 bowel obstructions.  Tr. 1884-2272.

An aside: this case poses a daunting challenge based on the sheer size of the record, almost 2500 pages, of which over two thousand pages are medical records.  The Court observes that this may have adversely affected the ability of the ALJ, the non-examining experts and even the parties to comprehend the totality of Plaintiff's conditions.  It is also worth noting that there is not a scintilla of evidence to suggest, nor did the ALJ find, that the size of Plaintiff's record was artificially inflated by malingering.  That is, this is not a case where the claimant was unnecessarily going to the emergency room or to medical appointments.  To illustrate with one example, the record reflects that Plaintiff generally called her treating physician about bowel pain and went to the emergency room on medical advice.

Whatever may be the reason, despite the overwhelming totality of this unrebutted[7] aspect of the record, coupled with the VE's testimony that more than one day per month or one hour per day of absence could preclude all work, the ALJ simply ignored Plaintiff's argument that she could not sustain a job because she would miss too much work.  I find that this complete failure even to address the issue of absenteeism is error requiring remand.  Relatedly, I find that the ALJ also erred in tackling the issue of the G-tube with no medical findings or opinions to guide him, by ignoring the medical record (which established that the tube caused discomfort and required a weekly appointment with a visiting nurse) and rejecting without explanation Plaintiff's testimony (that she emptied it daily, with the timing unpredictable based on when she experienced pressure).  Instead, with no evidence to support the underlying premise (that a job such as housekeeping can be performed by an individual with an open G-tube accessing the stomach, as well as that the emptying of the stomach in Plaintiff's circumstances is an operation that can be timed to accommodate workplace obligations), he relied on his finding that the G-tube would not affect Plaintiff's ability to work because "claimant . . . does not provide evidence that [stomach draining] could not be done after work hours."  Tr. 21.  Finally, but importantly, I find that the ALJ erred in basing the physical RFC on the findings of the non-examining physicians, who were entirely unaware of the serious exacerbation of Plaintiff's bowel issues in 2020, including the insertion of the G-tube, who did not see the physical therapy records reflecting significant strength and movement limitations, and who did not have access to a sufficiently developed

---

[7] That is, the sheer number of appointments, hospitalizations and surgical procedures is unrebutted.  Less clear (because a medical expert would be required to address the issue) is how long each of Plaintiff's hospitalizations and surgical procedures continued to affect her ability to work after she was discharged from the hospital or the procedure was completed.

record to permit them even to consider how the total number of medical appointments and

hospitalizations would impact work attendance.[8]

To address these errors with the assistance of one or more medical experts consistent with

the goal of "ensur[ing] a just outcome in Social Security disability claims," Mary K. v. Berryhill,

317 F. Supp. 3d 664, 667 (D.R.I. 2018) (internal citation and quotation marks omitted), I

recommend that the case be remanded for further proceedings.[9]

**B.     Plaintiff's Mental Health Limitations**

Plaintiff's mental health challenge partly rests on the unavailing arguments that the ALJ

misinterpreted the mental health evidence and wrongly rejected the opinion of Nurse Practitioner

Chanta Pou, who was Plaintiff's longtime prescriber of medication for mental health issues.  I

see no error in the ALJ's treatment of the Whipple Neuropsychological Evaluations, particularly

where his decision accurately restates the Whipple findings and relies on the non-examining

psychologists to assist in the interpretation of the 2018 Whipple report, which is substantially

similar to the 2019 Whipple report that they did not see.  Further, the ALJ is correct that Nurse

Pou's RFC opinion contains findings that clash with the overall mental health treating record.

By way of just one example, Nurse Pou noted that Plaintiff was unable to meet competitive

standards in getting along with coworkers or peers; this finding is contradicted by Plaintiff's

---

[8] Because of the amendment of Plaintiff's onset date to January 23, 2019, it would appear that the non-examining physicians saw mostly pre-onset records.  They did not review more than seven-hundred pages of material submitted after they completed their work.

[9] I do not recommend that the Court simply order an award of benefits.  While the evidence of Plaintiff's medical impairments may seem overwhelming to me, such an observation is based on my lay interpretation of complex and conflicting medical evidence, which is just as legally inappropriate a foundation for a Social Security decision as it is improper for an ALJ to rely on his lay interpretation of complex and conflicting medical evidence.  Further, this record is also replete with other evidence that is not emphasized in this report and recommendation, for example references to socializing with friends, biking, walking and exercising.  Therefore, this is not a case where the evidence is overwhelming with no unresolved factual issues requiring further development on remand.  See Sacilowski, 959 F.3d at 436-37.

consistently cooperative attitude in dealing with her treating providers (including Nurse Pou), as well as her well-documented ability to socialize with friends and maintain a relationship.

Nevertheless, I find that the ALJ stumbled in finding that Plaintiff's mental health trended toward "improvement" after the 2019 partial hospitalization at Butler Hospital, as well as in basing his RFC on the findings of the non-examining psychologists despite their failure to "review more recent medical evidence." Tr. 21, 23. The crux of the problem is that Plaintiff's longtime therapist, Ms. Katherine Pecora, LICSW, consistently diagnosed "Moderate" depression during the period covered by the expert psychologists' file review. However, some weeks after Plaintiff's partial hospitalization at Butler, on August 1, 2019, Ms. Pecora's diagnosis worsened materially to "Major Depressive Disorder, Single Episode, <u>Severe</u> with mood," . . . "with possible Psychotic Features." Tr. 1779 (emphasis supplied). Ms. Pecora largely sustained this "severe" diagnosis to the end of the period in issue. <u>See</u> Tr. 1780-83, 2300-03, 2305-08; <u>but see</u> Tr. 2304. The ALJ's finding about "improvement" cherry picks from Ms. Pecora's anecdotal notes but ignores this material worsening in the operative diagnosis. The matter is cinched by the non-examining psychologists' lack of awareness of this worsening of Plaintiff's mental health; therefore, their findings do not amount to substantial evidence and it was error for the ALJ to rely on them.

Based on the foregoing, I recommend remand for further consideration of the limitations caused by Plaintiff's mental impairments.

IV.   <u>**Conclusion**</u>

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be DENIED. Any objection to this report and

recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 22, 2022